UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                              Plaintiff,             **MEMORANDUM & ORDER**

      -against-                            05 CV 4559  (DRH) (WDW)

TOWN OF HUNTINGTON and
HUNTINGTON YOUTH BUREAU
YOUTH RESEARCH INSTITUTE, INC.,

                             Defendants.
-----------------------------------------------------------X
**APPEARANCES:**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Attorney for Plaintiff
New York District Office
33 Whitehall Street, 5th Floor
New York, New York
By: Elizabeth Grossman, Regional Attorney
    Judy Keenan, Supervisory Trial Attorney
    Monique J. Roberts, Trial Attorney
    Margaret A. Malloy, Trial Attorney

**CULLEN and DYKMAN LLP**
Attorney for Defendant Huntington Youth Bureau Research Institute, Inc.
Garden City Center
100 Quentin Roosevelt Boulevard
Garden City, New York 11530-4850
By: James P. Clark, Esq.

**JOHN J. LEO, ESQ.**
Attorney for Defendant Town of Huntington
100 Main Street
Huntington, New York 11743

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Equal Employment Opportunity Commission ("Plaintiff" or "EEOC") filed the present action against defendants Town of Huntington ("Huntington" or the "Town") and Huntington Youth Bureau Youth Research Institute, Inc. ("Youth Bureau") (collectively, "Defendants"), alleging that Defendants discriminated against Janie Schmidt ("Schmidt") because of her age, and retaliated against her for opposing discriminatory practices, in violation of the Age Discrimination in Employment Act (the "ADEA"). Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons that follow, Defendants' motion is denied.

## BACKGROUND

The material facts, drawn from the Complaint and the parties' Local 56.1 Statements, are undisputed unless otherwise noted.

The Youth Bureau provides services to at-risk families and youth within Huntington through special Town-wide projects. Project Sanctuary and Project Excel are two of the programs that are run under the auspices of the Youth Bureau. Schmidt began working at the Youth Bureau in January 1990 as an employment counselor for Project Enterprise, later called Project Excel. On November 1, 1999, she was hired by Project Sanctuary as the Independent Living Skills Counselor. As the Independent Living Skills Counselor, Schmidt was required to seek out and work with youths between the ages of 16-21 and to provide case management, living skills, and crisis management services to them. Jeannette Myers was Schmidt's supervisor when she was initially hired by Project Sanctuary. Ms. Myers left her position with Project Sanctuary in September 2002. Anthony Zenkus

("Zenkus") was hired as Project Director of Project Sanctuary in December 2002 and became Schmidt's new supervisor. Zenkus was 38 years old and Schmidt was 58 years old.

Schmidt and Zenkus first met in 1990 when Schmidt started working at the Youth Bureau. Schmidt worked with Zenkus prior to 1999 when they were both assigned to work out of the Youth Directions and Alternatives office in Greenlawn.

At Project Sanctuary, Zenkus reported to Patsy Hirschhorn ("Hirschhorn"), Youth Project Director, who began overseeing Project Sanctuary in September 2002. Hirschhorn also served as Acting Project Director for Project Sanctuary from September to December 2002, until Zenkus was hired. Hirschhorn reported to Maria Georgiou ("Georgiou"), Executive Director of the Youth Bureau since February 1, 2001.

In addition to Plaintiff, there were two other full-time counselors at Project Sanctuary who reported directly to Zenkus: Lizabeth Graeve ("Graeve") (Runaway Counselor) and Jennifer Grosser ("Grosser") (Family Social Work Counselor). Both Graeve and Grosser were in their twenties.

According to Plaintiff, "Zenkus began a campaign of discrimination against Schmidt . . . almost from the moment he became Sanctuary's Project Director." (Pl.'s Mem. at 1.) Zenkus's animus towards Schmidt began in 1999 when they were both working at Greenlawn Youth Directions and Alternatives. When Zenkus learned that Plaintiff was transferring to the Independent Living Skills Counselor position, Zenkus told a then-colleague, Timothy Sweeney, that Schmidt was too old to work with the Youth Bureau population of 12-21 year olds. According to Mr. Sweeney's affidavit, Zenkus told Mr. Sweeney that Zenkus did not agree with the decision to hire Schmidt as Independent Living Skills Counselor "because she was too old for the clients to relate to and that

she would be ineffective as such." (Pl.'s Ex. 8.) Zenkus "added that the position needed a much younger individual to be effective in that role [and] went on to compare [] Schmidt to younger counterparts (all in the age range of 22 to 29) who had previously held that position and communicated that she would fail in comparison due to, what [] Zenkus perceived to be, her advanced age." (*Id.*)

Schmidt claims that once Zenkus became her supervisor at Project Sanctuary, he treated her less favorably than the two other younger counselors. For example, Zenkus's demeanor towards Schmidt was hostile and demeaning; he excluded her from social conversation and often invited her younger colleagues to meet him at bars or to hear his band perform while extending no similar invitations to Schmidt; he told Graeve she should "hang out" with the staff of a different project because they were "young and motivated" and told Schmidt it was wonderful that the director of another project was able to hang out with her staff because they were all about the same age; he gave Schmidt a memorandum outlining performance expectations, including deadlines for performances of certain tasks, while the two younger counselors received no similar memo; upon complaining of the memorandum to Hirschhorn, Zenkus's supervisor, Hirschhorn directed Zenkus to prepare memoranda for the other two younger counselors; Zenkus then distributed similar memoranda to the other two counselors but told them before hand that their task dates were simply "targets." (Pl.'s Stmt. of Material Disputed Facts ¶¶ 160-85.)

Schmidt made several complaints regarding Zenkus's treatment. On February 14, 2003, Schmidt met with Hirschhorn and Zenkus and complained to Hirschhorn about the hostile and disparate treatment Zenkus had been exhibiting towards her. According to Schmidt, she complained that Zenkus was treating her differently from the younger counselors. On April 23, 2003, Schmidt

met with Georgiou and complained that Zenkus continued to harass her despite her previous complaints to Hirschhorn. Schmidt claims that she specifically complained to Georgiou that Zenkus was treating her differently than the younger staff. On May 8, 2003, Schmidt wrote a letter to Georgiou (with a copy to Hirschhorn), again complaining of Zenkus's hostile treatment of her. The letter specifically states that "[b]eginning almost immediately after Mr. Zenkus started at [Project] Sanctuary, his tone and language toward me have been demeaning and hostile, and I quickly began to feel as if I was being treated differently than other, younger employees with whom Mr. Zenkus seemed to have a more friendly relationship." (Pl.'s Ex. 22.) Schmidt was terminated on September 25, 2003. In December 2003, Defendants hired Elizabeth Brown ("Brown") to replace Schmidt for the position of Independent Living Skills Counselor. Brown was in her twenties when hired.

Defendants' version of the relevant events is, not unexpectedly, quite different. Defendants claim that Schmidt failed to meet required goals for her position for two consecutive years. More specifically, Defendants maintain that the Independent Living Skills Counselor position was funded almost exclusively through a grant which required that Schmidt provide intensive case management services to at least 40 youth in 2002. Schmidt failed to meet her contract goal for 2002. As early as January 2003, Zenkus and Hirschhorn expressed concern about the number of youth to whom Schmidt was providing services, especially due to the possibility that the program could lose its funding if Schmidt failed to meet her contract goal again in 2003. In March 2003, Hirschhorn recommended that Schmidt be terminated due to her growing concerns about Schmidt's ability to meet her contract goals for services in 2003. Zenkus allegedly opposed Hirschhorn's recommendation in March 2003. Georgiou, who as Executive Director had the exclusive authority to approve any termination, chose not to terminate Schmidt in March 2003. Despite the emphasis

placed by her supervisors on the need for her to increase her intensive case management numbers, Schmidt continued to struggle to increase her caseload. According to Defendants, Schmidt provided case management services to a total of only 12 clients through the first eight months of 2003. In September 2003, Hirschhorn again recommended to Georgiou that Schmidt be terminated. This time, Georgiou concurred with Hirschhorn and authorized Schmidt's termination on or about September 25, 2003. According to Defendants, Zenkus was not involved in the decision to terminate Schmidt's employment, nor did he recommend that Schmidt be terminated. In fact, according to Defendants, Zenkus recommended that Schmidt be placed on probation rather than be terminated at that time. Hirschhorn was 57 years old at the time she recommended that Schmidt be terminated and Georgiou was 56 years old at the time she authorized Schmidt's termination.

## DISCUSSION

### I. *Applicable Law and Legal Standards*

#### A. *Summary Judgment*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all

ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant

to offer "persuasive evidence that [her] claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Board of Elections of the City of New York*, 224 F.3d 149, 157 (2d. Cir. 2000), and should thus be granted with caution in employment discrimination cases. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). "[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation." *Id.* "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

### B. The McDonnell-Douglas Burden-Shifting Methodology

In *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792, 802-804 (1973), the Supreme Court first enunciated the now-familiar "burden-shifting" formula used in analyzing Title VII employment discrimination claims based on indirect or circumstantial evidence. This standard was further refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981) and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-511 (1993). Claims brought pursuant

to the ADEA are also analyzed under the *McDonnell-Douglas* burden-shifting framework. *See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

Under *McDonnell-Douglas* and its innumerable progeny, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell-Douglas* framework and its presumptions and burdens disappear, leaving the sole remaining issue of "discrimination vel non," and thus (3) the burden shifts back to the plaintiff to prove that the employer's stated reason is merely pretextual and that race discrimination was an actual reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

The burden of establishing a prima facie case of employment discrimination has been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994), or even "minimal." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). It is a burden of production, not persuasion, and involves no credibility assessments. *Reeves*, 530 U.S. at 143.

Likewise, the employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory. *See Seils v. Rochester City Sch. Dist.*, 192 F. Supp.2d 100, 111 (W.D.N.Y. 2002) (citing, *inter alia*, *Meiri*, 759 F.2d at 995 (2d Cir. 1985)), *aff'd*, 99 Fed. Appx. 350 (2d Cir. 2004). Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*,

869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n. 8 (7th Cir. 1987)), and may not "sit as super personnel departments, assessing the merits — or even the rationality — of employers' non-discriminatory business decisions." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991). Thus, "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

In order to demonstrate that the employer's stated non-discriminatory reasons for the allegedly discriminatory action are pretextual, "[a] plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995). However, to rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988). "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri*, 759 F.2d at 998.

## II.    *Plaintiff Has Raised a Genuine Issue of Material Fact as to its Discrimination Claims*

### A.    *Plaintiff Has Established a Prima Facie Case of Age Discrimination*

To establish a prima facie case of discrimination, a plaintiff must show that: (1) she belonged to a protected class, (2) was qualified for the position she held or sought, and

(3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). Here, Defendants dispute the second element only and contend that Plaintiff cannot establish that Schmidt was qualified for her position. Their sole argument in this regard is that Schmidt's "performance failures in 2002 and 2003 establish[] that she was not, in fact, qualified to perform the position of Independent Living Skills Counselor." (Research Institute's Mem. at 11.)

The Court's task in assessing Plaintiff's qualifications at the prima facie stage is a limited one. The Second Circuit has "long emphasized that the qualification prong must not be interpreted in such a way as to shift into the plaintiff's *prima facie case* an obligation to anticipate and disprove the employer's proffer of a legitimate, non-discriminatory basis for its decision." *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001). Thus, to show qualification, a plaintiff need not demonstrate perfect or even average performance. "Rather, she need only make the 'minimal showing' that she possesses the basic skills necessary for the performance of the job." *Id.* (citations and internal quotation marks omitted). This minimal showing is consistent with the purpose of the qualification prong which "'is simply to help eliminate[] the most common nondiscriminatory reasons for the plaintiff's rejection.'" *Id.* (quoting *Texas Dept of Comty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). "It cannot be more than that." *Id.*

The Court finds that Plaintiff has made a "minimal showing" that Schmidt was qualified for the Independent Living Skills position. Defendants' argument that Schmidt was not qualified because she failed to meet her contract goals conflates the qualification requirement with the second stage of the burden-shifting analysis in which the employer offers a non-discriminatory rationale for the discharge, precisely what the Second Circuit cautioned against doing in *Daly*.

Because there is no dispute as to whether Schmidt was actually capable of performing the tasks assigned to her, she has met at least the threshold level of qualification required to make out this element of a prima facie case.

Defendants do not contest the remaining elements. Accordingly, the Court finds that Plaintiff has established a prima facie case of age discrimination. Parenthetically, the Court notes that because Schmidt was 58 at the time of her termination and was replaced by a woman approximately 30 years her junior, Plaintiff has satisfied the fourth prong of its prima facie case. *See Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001) (plaintiff may satisfy fourth prong of prima facie case of discrimination by showing "the ultimate filling of the position with an individual who is not a member of the protected class"); *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) ("[T]he fact that [plaintiff] was replaced by a 31-year-old is sufficient to give rise to the inference that [plaintiff] was the victim of discrimination.").

**B.**      ***Defendants' Legitimate Non-Discriminatory Reason for Their Actions***

Once a plaintiff has established a prima facie case of discrimination, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. As noted previously, an employer's burden of showing a legitimate non-discriminatory reason for its actions is not particularly onerous.

Here, the Defendants maintain that they terminated Plaintiff because of her unsatisfactory work performance and her failure to satisfy case management goals. Because poor job performance constitutes a legitimate, non-discriminatory reason, Defendants have satisfied their burden of production. *See, e.g.*, *Daly*, 243 F.3d at 696 (2d Cir. 2001) ("An employer's dissatisfaction with even a qualified employee's performance may, of course, ultimately provide a

legitimate, non-discriminatory reason for the employer's adverse action."); *Bellom v. Neiman Marcus Group, Inc.*, 975 F. Supp. 527, 532 (S.D.N .Y. 1997) (failure to meet sales quota was a sufficient nondiscriminatory reason).

C.      ***Whether Defendants' Proffered Reasons are Pretextual***

Once an employer has articulated a legitimate, non-discriminatory reason for its actions, the plaintiff then has the burden of showing that the stated reason was pretextual, and that more likely than not discrimination motivated the adverse employment action. Construing the evidence in the light most favorable to Plaintiff, the Court finds that there is a sufficient basis for a trier of fact to doubt Defendants' proffered evidence and ultimately find that the reasons offered by Defendants were pretextual.

It is undisputed that Georgiou was the only person who had authority to approve the termination of an employee of the Youth Bureau and that Plaintiff has provided no evidence that Georgiou harbored age-based animus. Instead, Plaintiff alleges that Zenkus, Schmidt's direct supervisor, possessed such animus, and that Zenkus had substantial input in the decision-making process. The record, as noted *infra*, supports this contention. *See Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 124 n.12 (2d Cir. 2004) (repeated stereotypical comments made by a supervisor who played a substantial role in the decision to terminate are sufficient to support a finding of discriminatory motive); *Rose v. New York City Bd. of Educ.*, 257 F.3d 156, 162 (2d Cir. 2001) (finding discriminatory motive where comments were made to plaintiff "on more than one occasion by her immediate supervisor, who had enormous influence in the decision-making process").

1.      ***Zenkus had Substantial Input in the Decision-Making Process***

Although Defendants make much of the fact that Zenkus and Hirschhorn testified at their depositions that Zenkus opposed Schmidt's termination in September 2003, there is evidence in the record which demonstrates otherwise. In Defendants' July 23, 2004 Position Statement provided to the EEOC as Defendants' response to Schmidt's Charge of Discrimination, Defendants indicate as follows:

> Ms. Georgiou, Ms. Hirschhorn and Mr. Zenkus met to discuss Ms. Schmidt's situation [in September 2003]. They *unanimously agreed* that Ms. Schmidt must be terminated for failing to perform the requirements of her position; especially with respect to meeting . . . minimum targets.

(Pl.'s Ex. 19 at EEO24 (emphasis added).)

It is well established that pleadings filed by a party's attorney are "admissions of a party-opponent and are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party." *See United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984); *see also Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact."). Here, the admission by Zenkus's attorney in prior pleadings before the EEOC that Zenkus agreed that Schmidt should be terminated constitutes an admission by Zenkus which directly contradicts his deposition testimony. As such, it creates a genuine issue of material fact as to whether or not Zenkus recommended that Schmidt be discharged.

Moreover, there is evidence in the record that as Schmidt's direct supervisor, Zenkus was the only one with input regarding Schmidt's performance and that in written evaluations, he graded her poorly. For example, on April 21, 2003, Zenkus placed a memorandum of warning in

Schmidt's file stating that Schmidt was insubordinate for purportedly failing to perform street outreach as previously directed. On September 17, 2003, Zenkus wrote a performance evaluation for Schmidt for the period of December 2002 through September 2003, indicating that Schmidt's performance was unsatisfactory and that she had failed to satisfy the requirements of her position. Thus, the Court finds that there is sufficient evidence in the record from which a reasonable fact-finder could infer that Zenkus played a substantial role in Goergiou's decision to terminate Schmidt.

### 2. *Zenkus Harbored Age-Related Animus*

Defendants also attempt to downplay Zenkus's 1999 comment about Schmidt being too old for the Independent Living Skills Counselor position as a stray comment that is too remote from the 2003 decision to terminate to be relevant. The Court disagrees.

It is well-established that stray remarks, even if made by a decision maker, without more, do not constitute sufficient evidence to make out a case of discrimination. *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998). When other indicia of discrimination are presented, however, "the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance." *Id.* In order for the remarks to be deemed significant, the plaintiff must show their nexus to the adverse employment decision. *See, e.g.*, *Pronin v. Raffi Custom Photo Lab, Inc.*, 383 F. Supp. 2d 628, 636-37 (S.D.N.Y. 2005) (citing cases).

Here, Zenkus's 1999 comments, though made years before Schmidt was terminated, bear directly on what Zenkus apparently perceived to be Schmidt's inability to perform her job due to her age. In this regard, his comments "dr[a]w a direct line between [age] stereotypes and the conclusion that [Schmidt] should not [hold the Counselor position]." *Back*, 365 F.3d at 124 n.12; *see also Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115 ("The more a remark evinces a

discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be.").

Moreover, other indicia of discrimination exist which would permit a reasonable trier of fact to conclude that Zenkus's 1999 remarks were related to the decision to terminate Schmidt. Zenkus made subsequent comments which although not as explicit as his 1999 remarks, may be interpreted to reveal a similarly discriminatory sentiment. *See Tomassi*, 478 F.3d at 116 ("The relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class."). For example, Zenkus told Graeve that she should "hang out" with the staff of a different project because they were "young and motivated" and remarked to Schmidt that it was wonderful that the director of another project was able to hang out with her staff because they were all about the same age. These statements may not be viewed as offensive but may nonetheless suggest that Zenkus harbored age-related animus towards Schmidt. *Id.* ("Inoffensive remarks may strongly suggest that discrimination motivated a particular employment action.").

Finally, there is evidence from which reasonable juror could conclude that Schmidt was treated less favorably than similarly situated employees outside the protected class, viz Graeve and Grosser. Under Second Circuit law, where a plaintiff seeks to make out a case of discrimination "by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that she shared sufficient employment characteristics with that comparator so that they could be considered similarly situated." *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 64 (2d Cir. 1997). Furthermore, "such an employee must be similarly situated in all *material* respects--not in all respects." *McGuinness v. Lincoln Hall,* 263 F.3d 49, 54 (2d Cir. 2001) (emphasis in original).

In order for employees to be similarly situated in all material respects, "a plaintiff must show that her co-employees were subject to the same performance evaluation and discipline standards." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (citing *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999)). In addition, Plaintiff must demonstrate that the similarly situated employees engaged in comparable conduct. *Id.*

Here, although Plaintiff, Graeve and Grosser all held different counseling positions and were hired at different times, there is evidence to support a finding that they were similarly situated. All three worked for Project Sanctuary and reported directly to Zenkus. Zenkus provided each counselor with a memorandum outlining each employee's performance expectations, including deadlines, which contained virtually identical language. Moreover, there is evidence that although Graeve and Grosser had low case numbers, they were not disciplined in any manner. Based upon this record, the Court finds that a reasonable juror could conclude that the three counselors were similarly situated and that Schmidt was treated adversely based on her age.

In sum, viewing the record in toto, and drawing all inferences in Plaintiff's favor, the Court finds that Plaintiff has presented sufficient evidence to raise a question of fact as to whether Schmidt's firing was discriminatory. A juror could reasonably construe Zenkus's remarks, together with the other indicia of discrimination, as persuasive evidence that Zenkus believed that a younger person would be better suited for the Independent Living Skills Counselor position. A juror could further find that Zenkus played a substantial role in Goergiou's decision to terminate Schmidt. Accordingly, Defendants' motion for summary judgment on Plaintiff's age discrimination claims is denied.

**III.** *Plaintiff Has Raised a Genuine Issue of Material Fact as to its Retaliation Claims*

Plaintiff alleges that Schmidt was terminated in retaliation for complaining about age discrimination. To establish a prima facie case of retaliation under the ADEA, an employee must show: "'(1) she was engaged in an activity protected under the [ADEA]; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer.'" *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003) (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)); *see also Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (noting that same standards and burdens apply to retaliation claims under the ADEA and Title VII). Once the employee has established a prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse action. If it does so, then the burden shifts back to the employee to demonstrate pretext. *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 94-95 (2d Cir. 2001).

Defendants contend that Plaintiff cannot meet its prima facie case because it cannot show that Schmidt engaged in a protected activity under the ADEA, that Defendants were aware of Schmidt's participation in the protected activity, and that a causal connection existed between the protected activity and Schmidt's termination. Defendants do not contest that Schmidt suffered an adverse action.

The ADEA does not require that protected activity consist of any kind of formal complaint. Rather, an informal complaint to a supervisor suffices so long as the employee has "a good faith, reasonable belief that the underlying challenged actions of the employer violated the

law." *Gregory*, 243 F.3d at 700-01; *see also Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998); *Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992). As to the second element, the employer's awareness, Defendants must have "understood, or could reasonably have understood, that . . . [Schmidt's] opposition was directed at conduct prohibited by [the ADEA]." *Id.*

It is undisputed that Schmidt met with Hirschhorn in February 2003, and with Georgiou in April 2003, to complain about Zenkus. Schmidt contends that at these meetings she specifically indicated that Zenkus was treating her differently from the younger counselors. Defendants deny that Schmidt made any references to age discrimination. These competing explanations raise issues of fact as to whether Schmidt engaged in protected activity.

On May 8, 2003, Schmidt wrote a letter to Georgiou, indicating that Zenkus was "demeaning and hostile" and "treated [Schmidt] differently than other, younger employees with whom Mr. Zenkus seemed to have a more friendly relationship." (Pl.'s Ex. 22.) This letter, which expressly references what Schmidt perceived to be Zenkus's disparate treatment, clearly suffices to place Defendants on notice that Schmidt was complaining of age discrimination. As such, the letter constitutes protected activity from which Defendants could reasonably have understood that Schmidt was complaining of unlawful conduct. Accordingly, the Court finds that Plaintiff has met the first two elements of a prima facie case of retaliation.

The final element of Plaintiff's prima facie case is that a causal connection exists between the protected activity and the adverse action. In the Second Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by "showing that the protected activity was closely followed in time by the adverse [employment] action." *Reed*

*v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (citation and quotation marks omitted) (stating that twelve days between alleged sexual harassment and discharge could suggest a causal relationship). Though there is no bright-line rule, an adverse employment action following within a couple months of the protected activity typically suffices to establish causal connection. *See Cioffi v. Averill Park Cent. School Dist. Bd. of Educ.*, 444 F.3d 158, 168 (2d Cir. 2006) ("[T]he lapse of only several months after the letter and several weeks after the press conference between the protected speech and adverse employment action is sufficient to support an allegation of a causal connection strong enough to survive summary judgment.") (collecting cases); *Gormon-Bakos v. Cornell Co-op Extension of Schenectady*, 252 F.3d 545, 555 (2d Cir. 2001) (passage of up to five months short enough for causal connection where plaintiffs provided evidence of retaliatory actions throughout that time period); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (eight month period between filing of EEOC complaint and retaliating action sufficient to suggest causal relationship).

In the present case, Schmidt complained about Zenkus in February, April, and May 2003. She was fired on September 25, 2003, four and one half months after she last complained about Zenkus. Given the close temporal proximity between Schmidt's complaints and her termination, together with evidence which suggests that Zenkus's hostile treatment of Schmidt escalated after her complaints, the Court finds that Plaintiff has satisfied the causal nexus requirement. As a result, Plaintiff has sufficiently demonstrated a prima facie case of retaliation.

Defendants contend that Schmidt would have been discharged regardless of her complaints about Zenkus. Maybe so, but that is a matter for a jury to decide, as Plaintiff has proffered facts sufficient to warrant a finding that Defendants' stated reasons for Schmidt's

termination were pretextual, and that she was terminated because of her complaints.

**CONCLUSION**

For all of the above reasons, Defendants' motion for summary judgment is DENIED.

The parties are directed to appear before the Court on April 11, 2008 at 11:00 a.m in Courtroom 930

for a final status conference. At that time, the Court will schedule a date for trial.

**SO ORDERED.**

Dated: Central Islip, New York
     February 8, 2008

                                             _____/s/_____
                                             Denis R. Hurley
                                             Unites States District Judge