UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                                                                                                     05-CV-4559 (DRH)(WDW)

                                       Plaintiff,

                    - against -

TOWN OF HUNTINGTON and
HUNTINGTON YOUTH BUREAU YOURTH
RESEARCH INSTITUTE, INC.,

                                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MOTION IN LIMINE SUBMITTED ON BEHALF OF DEFENDANTS HUNTINGTON YOUTH BUREAU YOUTH DEVELOPMENT AND RESEARCH INSTITUTE AND <u>TOWN OF HUNTINGTON</u>

Garden City Center
100 Quentin Roosevelt Boulevard
Garden City, New York 11530-4850
Telephone (516) 357-3864


CULLENandDYKMANLLP

## PRELIMINARY STATEMENT

Defendants Huntington Youth Bureau Youth Development Research Institute (hereinafter "Youth Bureau") and the Town of Huntington ("Town") submit the following motions *in limine* seeking to preclude the introduction of certain evidence during the upcoming trial in this matter.

In particular, defendants seek to preclude the introduction of any evidence regarding the fact that Anthony Zenkus, a non-party witness, resigned from a position in or about 1990 because he had misrepresented his educational background on his job application. Defendants also seek to preclude the introduction of performance reviews provided to Janie Schmidt by supervisors other than those involved in the events at issue in this action and, in some instances, for work performed in positions other than the one she was terminated from in 2003. Similarly, defendants seek to preclude the introduction of any "letters" from third parties allegedly praising Mr. Schmidt's job performance. Additional evidentiary objections may be made at the time of trial.

Each issue will be addressed *seriatim*.

## ARGUMENT

### I

### EVIDENCE REGARDING MR. ZENKUS' 1990 RESIGNATION IS INADMISSIBLE UNDER F.R.E. 403

Anthony Zenkus was the direct supervisor of Janie Schmidt at the time that she was terminated in September 2003. Mr. Zenkus had been hired by the Youth Bureau into the position of Project Director in December 2002.

During the course of Mr. Zenkus' deposition in this case, it was revealed that in 1990 when he worked for an organization called Youth Directions and Alternatives, he resigned from his position after it was discovered that he had misrepresented his educational background on his job application. In particular, Mr. Zenkus had indicated on his resume and his application that he had received a Bachelor's degree in Social Welfare in 1988, when in fact he had not yet received that degree. According to Mr. Zenkus, although he had completed his four years at Adelphi University, he still had "Incomplete" coursework and, as a result, his degree had not yet been conferred at the time he applied for the position in question.

Clearly, any evidence relating to Mr. Zenkus' 1990 resignation, and the reason therefore, should be barred under Rule 403 of the Federal Rules of Evidence. It is undisputed that this incident had no relationship to the allegations involved in the case at bar, nor did it involve the Youth Bureau or the Town of Huntington. Moreover, the remoteness in time, more than 10 years before the events at issue in this case, makes evidence of this resignation far more prejudicial than probative.

2

While F.R.E. Rule 608(b) provides the Court with discretion to permit a questioner to cross-examine a witness by inquiring into specific instances of misconduct that are probative of truthfulness, any evidence proffered under that rule must still be deemed more probative than prejudicial under Rule 403. *See Martin v. National Railroad Pass. Corp.*, 1998 U.S. Dist. LEXIS 13979 at **4-5 (S.D.N.Y. 1998); F.R.E. 403. As stated above, evidence of Mr. Zenkus' resignation, which occurred *13 years* before the events at issue in this case, would only serve to confuse the jury and create a danger of unfair prejudice to the defendants in this case. The 1990 resignation did not involve either of the defendants and had no bearing on any of the events that give rise to the claims in this case. As a result, any evidence relating to Mr. Zenkus' 1990 resignation from his position with Youth Directions and Alternatives, including evidence regarding the underlying circumstances, should be precluded under F.R.E. 403.

## II

### EVIDENCE REGARDING PRIOR PERFORMANCE REVIEWS SHOULD BE PRECLUDED

The proposed Exhibit List submitted by the EEOC indicates that it intends to attempt to introduce evidence of performance reviews received by Ms. Schmidt from other supervisors prior to the time she was supervised by Mr. Zenkus and, his supervisor, Patsy Hirschhorn. Because those reviews were prepared by individuals who have no knowledge of the facts or circumstances involved in the case at bar, they are irrelevant to the issues to be decided at trial and, thus, should be deemed inadmissible.

The undisputed evidence in the record establishes that Ms. Schmidt started in her position as Independent Living Skills counselor for Project Sanctuary on November 1, 1999. It is further undisputed that Ms. Hirschhorn did not assume responsibility for that Project until September 2002. Ms. Hirschhorn, in her capacity as Youth Project Director, had direct supervisory authority over Ms. Schmidt for the period of September 2002 through December 2002, at which point Mr. Zenkus was hired to serve as Project Director. Mr. Zenkus thereafter reported directly to Ms. Hirschhorn who continued to have overall responsibility for Project Sanctuary.

The evidence will show that Ms. Hirschhorn, in her capacity as Youth Project Director, was the driving force behind the personnel decisions made affecting Ms. Schmidt. The evidence will also show that it was Ms. Hirschhorn who recommended to Maria Georgiou, Executive Director of the Youth Bureau, that Ms. Schmidt be terminated for poor performance on two separate occasions, in March and September 2003. It was after the second such recommendation that Ms. Georgiou made the decision to terminate Ms. Schmidt's employment in September 2003.

None of the prior reviews sought to be introduced by the EEOC in this case were authored by Ms. Hirschhorn or Mr. Zenkus. Moreover, none of the reviews were authored during a time when either of those individuals possessed any responsibility over Ms. Schmidt or the Sanctuary Project. Rather, the reviews were all authored by Ms. Schmidt's prior supervisors, including some who supervised her in positions other than the Independent Living Skills position from which she was ultimately fired. It is undisputed that none of these authors possessed any knowledge or information regarding Ms. Schmidt's job performance in 2003. Similarly, none of those individuals possessed

any information regarding the expectations and standards that were placed on Ms. Schmidt by Mr. Zenkus and Ms. Hirschhorn during 2003. It is well-settled that "a new manager is allowed to appraise an employee's work according to his or her own expectations, even if those expectations are contrary to a prior manager's expectations." *See, e.g., Beers v. Nynex Material Enterprises Co.*, 1992 U.S. Dist. LEXIS 240 at **32-34 (S.D.N.Y. 1992). As a result, any reviews issued by supervisors other than those involved in the events in 2003 are irrelevant and should be precluded. Moreover, even if the Court were to conclude that the prior reviews may have some relevance, any probative value is far outweighed by the potential for unfair prejudice and confusion as none of the authors will be present to testify as to the standards upon which Ms. Schmidt's performance was assessed and reviewed.

The EEOC has no basis for seeking to introduce the prior performance evaluations other than in an attempt to show that defendants' articulated reason for terminating Ms. Schmidt, her unsatisfactory performance, was pretext for age discrimination. "The attempt to use past positive performance reviews to show that more recent criticism was pretextual fails as a matter of law." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 474 (3d Cir. 2005). Here, there is no other reason for seeking to introduce the prior reviews that were prepared by individuals who were not involved in the events giving rise to the claims in this case, other than an attempt to attempt to discredit the assessments made by Mr. Zenkus, Ms. Hirschhorn, and, ultimately, Ms. Georgiou.

Courts have repeatedly recognized that reviews and evaluations received while in a different position or from a different supervisor offer little probative value regarding the legitimacy of subsequent evaluations in a different position or from a different

5

supervisor. *See, e.g., Ponniah Das v. Our Lady of Mercy Medical Center*, 2002 U.S. Dist. LEXIS 7771 at *27 (S.D.N.Y. 2002); *Taylor v. Polygram Records*, 1999 U.S. Dist. LEXIS 2583 at **39-40 (S.D.N.Y. 1999); *Beers*, 1992 U.S. Dist. LEXIS 240 at **32-34. As found by Judge Mukasey in *Beers*, "it would be perverse to find that, if a negative review is preceded by a positive review, the negative review is necessarily false." Thus, prior reviews have no evidentiary value in undermining subsequent negative reviews or assessment issued by new supervisors and "can give rise to no inference of age discrimination." *Beers*, 1992 U.S. Dist. LEXIS 240 at *32; *see also Taylor*, 1999 U.S. Dist. LEXIS 2583 at **39-40.

This is the precise issue that was addressed by the Court in *Scanlon v. Honeywell, Inc.*, 2005 U.S. Dist. LEXIS 23907 (W.D.Pa. 2005) in the context of a motion *in limine*. In granting the defendant's motion to preclude the introduction of prior positive reviews, the Court stated:

> There is no evidence that [the supervisors involved in the decisions at issue in the case] were involved in [plaintiff's] favorable performance reviews and awards; the record clearly reflects that [plaintiff's] favorable performance reviews and awards were received under other managers. Under these circumstances the Court finds and rules that evidence of [plaintiff's] favorable performance reviews and/or awards, which were received under different managers before the time period at issue in this case, are not relevant to whether [plaintiff] was subjected to unlawful retaliation. Moreover, even if evidence of [plaintiff's] job performance in 2000 and earlier were relevant, the Court finds and rules that the probative value of such evidence would be substantially outweighed by considerations of undue delay.

6

*Id.* at \*\*9-10. The same analysis and result should apply here and plaintiff should be precluded from introducing any performance reviews authored by anyone other than Mr. Zenkus or Ms. Hirschhorn.

### III

### EVIDENCE OF LETTERS FROM THIRD-PARTIES REGARDING MS. SCHMIDT'S JOB PERFORMANCE SHOULD BE PRECLUDED

The EEOC has indicated that it intends to seek to introduce "complimentary letters regarding Ms. Schmidt's work for defendants" into evidence at trial. While it is unclear what precisely is included under this heading, it is apparent that any such letters that were provided by third-parties are hearsay and irrelevant.

Clearly, any letters authored by third-parties are by definition hearsay as they are out of court statements offered for their truth. None of these third-party authors are going to be called as witnesses at trial and, thus, they are not subject to cross-examination.

Further, as fully discussed above with respect to the prior performance reviews, any "complimentary letters" that were issued by third parties prior to the time when Mr. Zenkus and Ms. Hirschhorn were responsible for the Sanctuary Project and Ms. Schmidt simply have no probative value to the issued involved in this case. To the extent that the EEOC seeks to introduce any "complimentary letters" that may have been issued by Mr. Zenkus, Ms. Hirschhorn, or Ms. Georgiou, they would, of course, bear some relevance. Letters authored by other unnamed individuals prior to December 2002, however, simply have no probative value. Accordingly, the unspecified "complimentary letters" that the

EEOC seeks to introduce into evidence should be precluded on hearsay, relevance, and prejudicial grounds.

## CONCLUSION

For the reasons set forth herein, defendants respectfully submit that plaintiff should be precluded from introducing any evidence relating to the 1990 resignation of Mr. Zenkus, performance reviews issued to Ms. Schmidt prior to December 2002, and any "complimentary" letters submitted to Ms. Schmidt by any third-parties. Defendants reserve their rights to make additional evidentiary objections at trial.

Respectfully submitted,

CULLEN AND DYKMAN LLP

By: _____
James P. Clark (JC 0824)
Attorneys for Defendant
Huntington Youth Bureau
100 Quentin Roosevelt Blvd.
Garden City, New York 11530
(516) 357-3864

JOHN J. LEO, ESQ.

/s/
_____
By: John J. Leo
Town Attorney
Town of Huntington
100 Main Street
Huntington, New York 11743
(631) 351-3043