UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - -X
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                                                           05-CV-4559 (DRH)(WDW)

                    Plaintiff,

              - against -

TOWN OF HUNTINGTON and
HUNTINGTON YOUTH BUREAU YOUTH
RESEARCH INSTITUTE, INC.,

                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - -X

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF MOTION IN LIMINE**


CULLENandDYKMANLLP

Garden City Center
100 Quentin Roosevelt Boulevard
Garden City, New York 11530-4850
Telephone (516) 357-3864

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

                Plaintiff,

- against –                                        05-CV-4559 (DRH) (WDW)

TOWN OF HUNTINGTON, and
HUNTINGTON YOUTH BUREAU
YOUTH RESEARCH INSTITUTE, INC.,

                Defendants.
-------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE
SUBMITTED ON BEHALF OF HUNTINGTON YOUTH BUREAU YOUTH
DEVELOPMENT RESEARCH INSTITUTE AND TOWN OF HUNTINGTON**

**PRELIMINARY STATEMENT**

Defendants Huntington Youth Bureau Youth Development Research Institute ("Youth Bureau") and the Town of Huntington ("Town") (collectively "Defendants") submit the following memorandum in further support of Defendants' motion *in limine* seeking to preclude Plaintiff from introducing any evidence regarding (1) allegations that Anthony Zenkus misrepresented his educational background on a job application in or about 1988 (2) performance reviews and letters of commendation provided to Janie Schmidt by supervisors other than those involved in the events at issue in this action (the "Performance Reviews"), and (3) any letters or memoranda of commendation from third parties regarding Ms. Schmidt (the "Letters"). Additional evidentiary objections may be made at the time of trial.

ARGUMENT

I

EVIDENCE REGARDING MR. ZENKUS' 1988 RESIGNATION
IS INADMISSIBLE UNDER F.R.E. 403

Plaintiff asserts that questions regarding the fact that Mr. Zenkus misrepresented his educational background on his job application in or about 1988 for an organization called Youth Directions and Alternatives should be permitted during Mr. Zenkus's cross-examination. Plaintiff asserts that evidence regarding a witness's credibility is always relevant and, therefore, this evidence should be permitted during cross-examination, regardless of the remoteness of the incident to the present action. Plaintiff, however, ignores the fact that F.R.E. Rule 608(b) provides the Court with *discretion* to permit cross-examination of a witness by inquiring into specific instances of misconduct that are probative of truthfulness, and any evidence proffered under that rule must still be deemed more probative than prejudicial under Rule 403. *See United States v. Schwab*, 886 F.2d 509, 513 (2d Cir. 1989). Contrary to Plaintiff's assertions, the fact that Zenkus's false statement was made approximately 20 years ago *does* affect the permissibility of Plaintiff's cross-examination. *See e.g., Bachir v. Transoceanic Cable Ship Co.*, 2002 U.S. Dist. Lexis 4340 at *28 (S.D.N.Y. 2002); *Whiting v. The Old Brookville Bd. of Police Commissioners*, 4 Fed. Appx. 11, 14 (2d Cir. 2001).

As such, courts have held that evidence regarding false statements on job applications, such as Mr. Zenkus's, can properly be excluded under Rules 608(b) and 403. *E.g., Crimm v. Missouri Pac. R.R. Co.*, 750 F.2d 703 (8th Cir. 1984) (District Court properly excluded evidence regarding false statements on application because (1) the misstatements occurred two years before the at-issue sexual harassment, (2) the witness

2

admitted the false statement on a subsequent application and during a deposition, and (3) the original misstatement was the result of a mistake); *Johnson v. Elk Lake School Dist.*, 283 F.3d 138 (3d Cir. 2002) (District Court properly excluded evidence that witness lied about making the dean's list in college on her resume when she first applied for a job with the defendant).

In *Johnson*, the court found that, although lying about the dean's list was arguably probative of the witness's character for untruthfulness, the District Court acted properly when it concluded that the remoteness in time – the resume was submitted nine years before the trial – substantially diminished the probative value of the evidence. *Id*. at 145, n.2. In so holding, the court noted that lying on a resume "although duplicitous and wrong, was not so indicative of moral turpitude as to be particularly probative of his character for untruthfulness." *Id*. It is clear that these holdings are directly applicable to our facts. First, Mr. Zenkus did misrepresent facts about his educational background in applying for a job, however, Mr. Zenkus's acts, while wrong, were "not so indicative of moral turpitude as to be particularly probative of his character for untruthfulness." Next, Mr. Zenkus admitted he made the false statement during his deposition. Finally, the time of Mr. Zenkus's actions is remote from the present trial – they were made approximately 20 years ago. Thus, it is clear that Mr. Zenkus' application from a job he resigned from over 18 years ago has little probative value and should not be raised during Mr. Zenkus's cross-examination.

Plaintiff cites to numerous cases in support of the introduction of this evidence, however, these cases are easily distinguishable from the instant case. For example, in *Lewis v. Baker*, 526 F.2d 470 (2d Cir. 1975), the court allowed the jury to consider an

3

employment application containing an untruthful statement regarding plaintiff's psychiatric disorder. However, the untruthful statement on the employment application involved the plaintiff's current employer (the defendant in the action), and "[h]is failure truthfully to inform his future employer of a psychiatric condition which defendants argue could have affected his judgment on the evening in question was thus not without probative value on the issue of his veracity." *Id.* at 475. Thus, in *Lewis*, the untruthful statement on the employment application was directly related to the incident at issue in that litigation. Here, the employment application has no relationship to the allegations involved and the application did not even involve any of the parties to this action.

Plaintiff also cites to cases involving untruthful statements on employment applications where the individual lied about prior criminal convictions. *See Jones v. New York City Health & Hosp. Corp.,* No. 00 Civ. 7002 (CBM), 2003 US Dist LEXIS 9183 (S.D.N.Y. June 2, 2003); *United States v. Redditt,* 381 F.3d 597 (7th Cir. 2004); *United States v. Tse,* 375 F.3d 148 (1st Cir. 2004); *United States v. Howard,* 774 F.2d 838 (7th Cir. 1985); *Schmidt v. Medicalodges, Inc.,* 523 F. Supp. 2d 1256 (D. Kan. 2007). Again, however, these cases are easily distinguishable. The courts in these cases focused on the fact that the witness lied about a criminal conviction, rather than the fact that the witness lied on an application. The reason these courts were so focused is clear: a criminal conviction in and of itself can be admissible for the purposes of credibility and is governed by Fed. R. Evid. 609(a)(2), which states, "evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement." Mr. Zenkus, of course, did not lie about a criminal conviction. Rather, Mr. Zenkus claimed he had obtained a particular degree.

4

These particular cases are further distinguishable because, as stated, they involve lying about past criminal convictions, whereas Mr. Zenkus's application was merely an exaggeration of his then current status.[1] Such a misstatement does not raise the same concerns regarding the credibility of Mr. Zenkus that the hiding of a criminal conviction would. As such, the cases cited by Plaintiff involving lies regarding a past criminal conviction are inapplicable to Mr. Zenkus's employment application.

Finally, Plaintiff does actually cite to cases where false statements were made on employment applications and were admissible to impeach credibility. However, those cases are distinguishable as well because all of those cases involved a *history* of false statements on more than one employment application and also on applications for apartments, driver's licenses, loans, memberships, credit card applications and income tax returns. *See United States v. Jones,* 900 F.2d 512 (2d. Cir. 1990); *Modlin v. McAllister Brothers, Inc.*, No. 00 Civ 517 (GBD), 2004 US Dist LEXIS 13374 (S.D.N.Y. July 14, 2004); *United States v. Zandi,* 769 F.2d 229 (4th Cir. 1985); *Watson v. Connelly,* No. CV 05-212, 2008 US Dist LEXIS 32 (W.D. Pa. Jan 2, 2008); *Byrne v. Gainey Transp. Servs.,* 96 Fair Emp Prac Cases (BNA) 591 (D. Kan. 2007). Mr. Zenkus does not have a history of making false statements on employment applications or any other documents. The false statement regarding Mr. Zenkus' degree was an isolated event, made close to 20 years ago and has little probative value. As such, the Court should exercise its discretion and bar Plaintiff from asking Mr. Zenkus any questions regarding this topic.

---

[1] It should be noted that Mr. Zenkus later completed his coursework and obtained the degree in question.

5

## II

## EVIDENCE REGARDING PRIOR
## PERFORMANCE REVIEWS SHOULD BE EXCLUDED

Plaintiff asserts that the Performance Reviews are relevant to establish the second element of a prima facie case of age discrimination: that Schmidt was qualified to perform the position she was fired from in 2003. Plaintiff's argument, however, ignores the decision of this Court denying Defendants' motion for summary judgment. *EEOC v. Town of Huntington and Huntington Youth Bureau Youth Research Institute, Inc.*, 05 CV 4559, 2008 U.S. Dist. LEXIS 9602 (E.D.N.Y. Feb. 8, 2008). That decision specifically held that "there is no dispute as to whether Schmidt was actually capable of performing the tasks assigned to her, she has met at least the threshold level of qualification required" to establish the second element of a prima facie case of age discrimination. *Id.* As such, evidence regarding Schmidt's Performance Reviews is irrelevant to the issue of whether Schmidt was qualified for the position.

Plaintiff also argues that the Performance Reviews help establish an inference of discrimination in Zenkus's negative evaluations. This argument ignores the simple fact that Zenkus was a new supervisor to Schmidt and "a new manager is allowed to appraise an employee's work according to his or her own expectations, even if those expectations are contrary to a prior manager's expectations." *See, e.g., Beers v. Nynex Material Enterprises Co.*, 1992 U.S. Dist. LEXIS 240 at **32-34 (S.D.N.Y. 1992). Plaintiff has no basis for seeking to introduce the prior performance evaluations other than in an attempt to show that defendants' articulated reason for terminating Ms. Schmidt, her unsatisfactory performance, was pretext for age discrimination. It has been held,

6

however, that "[t]he attempt to use past positive performance reviews to show that more recent criticism was pretextual fails as a matter of law." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 474 (3d Cir. 2005).

Indeed, numerous courts have held that evidence of a downturn in performance evaluations alone cannot be transformed into a predicate for a discrimination suit. *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998); *Romaine Crawford-Mulley v. Corning Inc.*, 194 F. Supp. 2d 212, 221 (W.D.N.Y. 2002). This is for the simple reason that, just because a person may have once adequately performed a job does not mean that their performance will never falter. *See Shabbat v. Blue Cross Blue Shield*, 925 F. Supp. 977, 988 (W.D.N.Y. 1996) ("To hold otherwise would be to hold that things never change, a proposition clearly without a basis in reality."). As such, it is clear that reviews and evaluations received while in a different position or from a different supervisor offer little probative value regarding the legitimacy of subsequent evaluations.

There is no dispute that Ms. Hirschhorn began overseeing Project Sanctuary in September 2002 and Mr. Zenkus was hired to take over the position of Project Director for the Sanctuary Program in December 2002. (Hirschhorn dep. 34); (Zenkus dep. 27). Further, upon Mr. Zenkus's hiring, he established new job duties and requirements for all counselors. Thus, Ms. Schmidt's previous reviews would have no bearing on the validity of her reviews by Mr. Zenkus. They were written by different supervisors who had different standards in assessing Ms. Schmidt and were based on different job requirements. As such, it is clear that the Performance Reviews have limited probative value.

7

In addition, it is clear that what little probative value exists is far outweighed by the potential for unfair prejudice and confusion. None of the authors will be present to testify as to the standards upon which Ms. Schmidt's performance was assessed and reviewed, and, more importantly, how those standards differ from those of Mr. Zenkus and Ms. Hirschhorn. Thus, there is a significant risk that the jury will believe that the same standards were used and, therefore, that Mr. Zenkus had no basis for his negative evaluations. As such, the Performance Reviews should not be introduced as evidence.

### III

### EVIDENCE REGARDING LETTERS AND MEMORANDA OF COMMENDATION SHOULD BE EXCLUDED

Plaintiff asserts that the third party letters establish that Schmidt was qualified for the position she was fired from in 2003. As stated above, however, there is no dispute as to whether Schmidt has met at least the threshold level of qualification required for a *prima facie* case. As such, evidence regarding the letters is irrelevant to the issue of whether Schmidt was qualified for the position she held.

A.   **The Letters And Memoranda Were Not Adopted By Defendants**

Plaintiff also asserts that the Letters are relevant because they show that the reason for Schmidt's termination was discriminatory, however the Letters submitted by Plaintiff from individuals other than Defendants' employees are clearly hearsay.[2] Plaintiff asserts that these letters should not be excluded as hearsay because they were adopted by Defendants. Plaintiff, as the proponent of the admission, has the burden of

---

[2] While memoranda and letters by Defendants' employees are not hearsay, they should not be introduced as evidence for the same reasons that the reviews should not be introduced as evidence as set forth in Section II above.

8

proving, through a preponderance of the evidence, that Defendants' conduct manifested an intent to adopt the statement. *Phipps v. Comprehensive Cmty. Dev. Corp.*, 00 Civ. 6063 (RJH) (KNF), 2005 U.S. Dist. LEXIS 1672 (S.D.N.Y. Feb. 4, 2005). The proponent of such evidence must show that the party against whom the statement is offered adopted or acquiesced to the statement. *Penguin Books U.S.A., Inc. v. New Christian Church*, 262 F. Supp. 2d 251, 258 (S.D.N.Y. May 13, 2003).

Courts have held that "the mere existence of a document in a party's files does not, without more, necessarily stamp the statements in the document as admissions attributable to that party." *See White Indus. v. Cessna Aircraft Co.*, 611 F. Supp. 1049, 1062 (W.D. Mo. 1985); *Osterneck v. E.T. Barwick Industries, Inc.*, 106 F.R.D. 327 (N.D. Ga. 1984) (the simple act of accumulating inadmissible information for a superior does not bring it within Rule 801(d)(2), only the "digestion" and assessment of that information with action taken thereupon is sufficient to make it an adoptive admission). As succinctly stated in *White*, to determine whether a document in a party's files can be qualified as an adoptive admission:

> it must be shown that the party acted (or failed to act) in some significant, identifiable way, in direct reliance upon the specific information in question, so as to demonstrate clearly the party's belief in and intentional adoption of that information. Such a finding will most often be possible where the party has actively requested or sought out the specific information in question, although I do not conceive this factor to be either a sine qua non to admissibility or an appropriate basis, standing alone, for admissibility

*Id.*

Here, Plaintiff has presented no evidence that Defendants acted in a significant or reliable way in reliance upon the documents. Defendants did not solicit these documents, nor has Plaintiff presented any information that Schmidt's evaluations were influenced in

9

any way by these documents. Indeed, the January 21, 1998 evaluation is the only review that even makes mention of any such documents, and that review does not indicate that the evaluation was influenced by the referenced documents; rather it simply notes that they exist.[3] As such, Plaintiff has not met its burden of establishing that Defendants adopted any of these documents and, therefore, the letters should be excluded.

**B.     The Letters And Memoranda Are Not Admissible As Business Records**

Plaintiff also claims that these memorandum and letters fall under the business records exception to the hearsay rule, Rule 803(6). To qualify under this exception, the documents must be made "at or near the time by, or from knowledge transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of the business activity to make the memorandum, report, record or data compilation, . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Fed. Rule of Evid. 803(6).

Plaintiff has offered no proof that these documents and memoranda satisfy these requirements. Plaintiff simply repeats these requirements and then states that they were satisfied. On this basis alone Plaintiff has failed to meet its burden of establishing that the business exception applies and the evidence should be excluded.

Even if those standards were met, however, the documents should be excluded because "double hearsay" exists. *See e.g.*, *Bennett v. Spitzer*, No 05-CV-1399 (JFB),

---

[3] Even if Plaintiff were able to establish that the documents referred to in the January 21, 1998 evaluation were adopted admissions, Plaintiff has not shown which documents are actually being referred to. As such, even if there was an admission, Plaintiff has failed to establish which documents should be introduced.

2007 U.S. Dist. LEXIS 6847 (E.D.N.Y. January 31, 2007). Double hearsay exists when a party seeks to introduce a business record that contains hearsay statements. *Id.* The proponent must provide an independent evidentiary basis for admitting the hearsay statements contained within the business record. *Id.*; *Agric. Ins. Co. v. Ace Hardware Corp.*, 214 F. Supp. 2d 413, 416 n.3 (S.D.N.Y. 2002) (no exception to the hearsay rule when parties submitting information to the report have no duty to report); *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991); *United States v. Kelly*, 349 F.2d 720, 772-73 (2d Cir. 1965). It is clear that the letters contain hearsay statements. Plaintiff has presented absolutely no evidence that there is any exception to the hearsay rule that would allow these statements to be admitted. Based on the above, the letters should not be introduced as evidence.

C.     **The Letters Are Irrelevant And Are Unfairly Prejudicial And Confusing**

Even assuming, *arguendo*, that these documents fall under some exclusion to the hearsay rule, it is clear that the letters are irrelevant to the issue of whether Schmidt was terminated because she was not performing her job. The opinions of third-parties as to Schmidt's activities have no bearing as to whether Schmidt was actually performing the requirements of her job. Indeed, Plaintiff has presented no evidence that the third-parties had any idea as to whether Schmidt was actually performing her job. Rather, it simply shows that those people appreciated the interaction that Schmidt had with them. As such, the letters are irrelevant as to whether Ms. Schmidt performed her job.

Finally, it is clear that the probative value of the letters is far outweighed by the potential for unfair prejudice and confusion. None of the authors will be present to testify

as to the standards upon which Ms. Schmidt's work was assessed or if the authors even understood what Schmidt's duties and responsibilities were. As such, the letters have the potential of leading the jury to believe that the authors of the letters understood what Schmidt's duties were and that she was adequately performing those duties. Therefore, the third party letters and memoranda should not be introduced as evidence.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully submit that Plaintiff should be precluded from introducing any evidence relating to Mr. Zenkus's 1988 job application, the Performance Reviews, and the third party letters and memoranda. Defendants reserve their rights to make additional evidentiary objections at trial.

Respectfully submitted,

CULLEN AND DYKMAN LLP

By: _____
   James P. Clark  (JC 0824)
   Attorneys for Defendant
   Huntington Youth Bureau
   100 Quentin Roosevelt Blvd.
   Garden City, New York  11530
   (516) 357-3864

JOHN J. LEO, ESQ.

   /s/
_____
By:  John J. Leo
Town Attorney
Town of Huntington
100 Main Street
Huntington, New York  11743
(631) 351-3043